**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **LOJER OY,**<br><br>Plaintiff,<br><br>v.<br><br>**THE REHAB LAB INC. D/B/A TRL TABLES,**<br><br>Defendant. | C.A. No. 2:26-cv-940<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lojer Oy, files this Complaint for Patent Infringement against The Rehab Lab Inc. d/b/a TRL Tables, and would respectfully show the Court as follows:

**I. THE PARTIES**

1. Plaintiff Lojer Oy ("Lojer" or "Plaintiff") is a Finnish company, having a principal place of business located at Putajantie 42, Sastamala 38210, Finland.

2. On information and belief, The Rehab Lab Inc. d/b/a TRL Tables ("TRL" or "Defendant") is a corporation organized and existing under the laws of the Province of Ontario, Canada, with an office at 3505 Odyssey Drive, 57 & 59, Mississauga, ON L5M 0Y9, Canada. This address is recorded with the Ontario Business Registry as Defendant's "registered or head office address." On information and belief, Defendant has another place of business at 3505 Odyssey Dr #64, Mississauga, ON L5M 2S4, Canada.

**II. JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant consistent with the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*, and the Due Process Clause. Defendant has purposefully directed activities at residents of Texas and this District, and Plaintiff's claims arise out of and relate to those activities. Without limitation, and on information and belief, Defendant has placed the Accused Products into the stream of commerce with the knowledge and expectation that they would be purchased by consumers in Texas and this District; regularly does or solicits business in this District; maintains an interactive website through which residents of this District may order the Accused Products; derives substantial revenue from sales of the Accused Products to persons or entities in this District; provides at least installation, technical support, and warranty service to customers located in this District; and engages in other persistent courses of conduct. Defendant's website accepts and fulfills orders for shipment to addresses in this District. Without limitation, on information and belief, within this state, Defendant has made, used, sold, offered for sale, and imported into the United States, the patented inventions, and induced use of the patented inventions, thereby committing, and continuing to commit, acts of patent infringement alleged herein. Defendant has committed such purposeful acts and/or transactions in Texas such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

5. In the alternative, and to the extent Defendant is not subject to the jurisdiction of the courts of general jurisdiction of the State of Texas or of any other State, this Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims arise under federal law. Defendant is a corporation organized under the laws of Ontario, Canada, with its principal place of business in Mississauga, Ontario, and under this alternative maintains no office, employee, agent for service of process, real property, bank account, or regular and

established place of business in any State of the United States. Under this alternative, upon information and belief, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any single State.

6. The exercise of jurisdiction under Rule 4(k)(2) comports with the Due Process Clause of the Fifth Amendment because Defendant has sufficient contacts with the United States as a whole. Defendant has purposefully availed itself of the United States market by designing and/or marketing the Accused Products for the U.S. market; obtaining U.S. regulatory approvals (including for shipping into the U.S.); marketing the Accused Products in U.S.-directed advertising; offering U.S.-dollar pricing and domestic shipping to U.S. addresses; doing and soliciting business in the U.S.; maintaining and/or attempting to maintain U.S. distribution and reseller relationships; deriving substantial revenues from sales into the United States; and engaging in other persistent courses of conduct. Plaintiff's claims for patent infringement arise directly out of and relate to those United States contacts, and the exercise of jurisdiction is reasonable and fair. Without limitation, on information and belief, within the United States, Defendant has made, used, sold, offered for sale, and imported into the United States, the patented inventions, and induced use of the patented inventions, thereby committing, and continuing to commit, acts of patent infringement alleged herein. Defendant has committed such purposeful acts and/or transactions in the United States such that it reasonably should know and expect that it could be haled into a federal district court as a consequence of such activity.

7. Venue is proper in this District under 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued in any judicial district. The patent venue statute, 28 U.S.C. § 1400(b), does not restrict venue as to alien defendants.

8. Defendant is subject to service of process in accordance with Federal Rule of Civil Procedure 4(f)(1) and/or the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, to which Canada is a signatory.

9. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(c)(3) and 1400(b).

## III. UNITED STATES PATENT NO. 9,642,761

10. Plaintiff incorporates the above paragraphs herein by reference.

11. On May 9, 2017, United States Patent No. 9,642,761 ("the '761 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '761 Patent issued from U.S. Application Serial No. 14/937,323 filed on November 10, 2015 ("the '323 application"). The '323 application, in turn, claims priority to Finnish patent application no. 20145982 filed with the Finnish Patent and Registration Office on November 10, 2014. The '761 Patent is entitled "PATIENT TABLE." A true and correct copy of the '761 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

12. Lojer is the assignee of all right, title, and interest in the '761 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '761 Patent. Accordingly, Lojer possesses the exclusive right and standing to prosecute the present action for infringement of the '761 Patent by Defendant.

13. With over 100 years of experience and with sales in more than 120 countries, Lojer is a leading manufacturer of medical furniture and rehabilitation equipment built for safer work, reliable performance, and better care. Lojer products include those configured for use in hospital and nursing, surgery, physiotherapy and rehabilitation, and related service industries.

14. Lojer offers for sale and sells its Manuthera 242 Mobilisation Table in the United States, including in this District, through Lojer's U.S. distributors and directly to chiropractic, physiotherapy, and rehabilitation practices. The Manuthera 242 Mobilisation Table is an example commercial embodiment of at least claim 1 of the '761 Patent.

15. In January 2017, Lojer was awarded the Fennia Prize for IPR Excellence, recognizing commendable use and protection of their intellectual property rights with regard to the Manuthera 242 treatment table. Lojer also received an honorable mention for the innovative product design and advanced technical design of the Manuthera 242 treatment table.

16. The patient table of the '761 Patent aligns with Lojer's core business. For example, as the '761 Patent explains, its patient table may be used as, for example, a hospital bed, a patient bed, operating table, treatment table, medical examination table, mobilisation table, manipulation table, etc. *See* Ex. 1 at col. 1:12-15.

17. The '761 Patent describes a patient table including a table top, a lower frame, and an intermediate frame. The intermediate frame is arranged between the table top and the lower frame, and it is pivotally connected to the lower frame by a lower joint of the intermediate frame so as to turn in relation to the lower frame and to the table top by an upper joint of the intermediate frame so as to turn in relation to the table top. A lower actuator at its lower end is pivotally connected to the lower frame by a lower joint of the lower actuator and at its upper end to the table top or the intermediate frame by an upper joint of the lower actuator. An upper actuator at its lower end is pivotally connected to the lower frame or the intermediate frame by a lower joint of the upper actuator and at its upper end to the table top by an upper joint of the upper actuator. The lower joint of the lower actuator is at a distance from the lower joint of the intermediate frame, and the upper joint of the upper actuator is at a distance from the upper joint of the intermediate

frame. The lower joint of the intermediate frame, the lower joint of the lower actuator and the lower joint of the upper actuator are at a horizontal distance from a first end of the lower frame that is less than half of the length of the lower frame. The upper joint of the lower actuator is further away from the first end of the lower frame, when seen in a horizontal direction, than the lower joint of the lower actuator; the upper joint of the upper actuator is further away from the first end of the lower frame, when seen in the horizontal direction, than the lower joint of the upper actuator; and the upper joint of the intermediate frame is further away from the first end of the lower frame, when seen in the horizontal direction, than the lower joint of the intermediate frame. *See, e.g.*, *id.* at 1:25-2:10.

18. This kind of table can be raised in a horizontal plane by driving both actuators in one direction, and it can be lowered in a horizontal plane by driving both actuators in another direction. This kind of table can also be driven to Trendelenburg position and reverse Trendelenburg position by cross-driving the actuators. *See id.* at 1:46-52.

19. A table such as this is extremely versatile and strong. *See id.* at 1:45-46.

## IV. COUNT I
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,642,761)

20. Plaintiff incorporates the above paragraphs herein by reference.

21. Defendant has infringed and continues to infringe claims 1-8 of the '761 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271, by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products constituting the Accused Instrumentalities, and/or inducing others to do the same. Defendant derives revenues from the activities relating to the Accused Instrumentalities.

22. For example and without limitation, the Accused Instrumentalities include at least TRL's Chiro Supreme 3.0 Hi-Lo Flexion Distraction Table, including models with and without

"red light therapy." Defendant makes, uses, sells, offers for sale, and imports into the United States, the Accused Instrumentalities. Defendant is a direct infringer of the '761 Patent, an inducer of infringement, and a contributor to infringement.

23. Lojer and Defendant compete directly for the same customers, and for the same distributors, in the United States market for hi-lo treatment and mobilization tables. On information and belief, customers who purchase an Accused Instrumentality from Defendant would otherwise be available to Lojer as purchasers of the Manuthera 242 Mobilisation Table, for example. Distributors have told representatives from Lojer that the Accused Instrumentalities appear to be remarkably similar to Lojer's Manuthera 242 Mobilisation Table.

24. Exhibit 2 (claim chart) is incorporated herein by reference. As illustrated in Exhibit 2, Defendant infringes claims 1-8 of the '761 Patent. The three images below show the Accused Instrumentalities between Fig. 1 of the '761 Patent and Plaintiff's Manuthera 242 Mobilisation Table. The resemblance is striking.



FIG. 1







**Fig. 1 of the '761 Patent** **Accused Instrumentalities** **Plaintiff's Manuthera 242 Mobilisation Table**

25. Defendant has touted the similarities between Plaintiff's Manuthera 242 Mobilisation Table and the Accused Instrumentalities on social media since at least January 17, 2026. *See, e.g.*, https://www.youtube.com/shorts/ywuPYisC2V8, a screenshot of which appears below:




26. An enlargement of the right portion is shown immediately below. Here, Defendant states "[i]f you like the Manuthera 242, you'll understand this table immediately. . . . Same treatment philosophy. Same clinical intent. Built for chiropractors." *Id.*



27. Defendant took the above actions intending to infringe and/or cause infringing acts by others. For example, Defendant advertises that "Supreme 3.0 is designed for clinics ready to move beyond basic spinal therapy equipment into a premium hi-lo table built for flexion distraction, positioning, and advanced patient workflows." https://trltables.com/products/supreme-3-0-hi-lo-flexion-distraction-table. Defendant further advertises that its products are "[s]upport controlled spinal movement, decompression-style treatment, patient positioning, and drop-assisted manual therapy from one advanced chiropractic platform." *Id.* TRL provides detailed instructions for how to use its table, including videos showing a "featured walkthrough" that is a "Full Supreme 3.0 Overview," while also providing other videos entitled "Quick Preview" (providing a "[f]ast look at table design and presentation"), "Clinical Motion" (instructing viewers to "[s]ee movement, position, and treatment setup"), "Patient Setup" (instructing viewers on "[h]elpful [information] for treatment-room planning and workflow"), and "Clinic-Ready Design" (showing "how the Supreme 3.0 presents in-room"). *Id.*

28. Lojer has complied with the requirements of 35 U.S.C. § 287 with respect to any patented article made, offered for sale, sold within, or imported into the United States by Lojer or its licensees. For example, Lojer has marked, and continues to mark, its Manuthera 242 Mobilisation Table with the '761 patent.

29. Defendant has had knowledge of the '761 Patent and its infringement prior to the filing of this Complaint.

30. On January 20, 2026, Lojer advised TRL of the '761 Patent and its infringement by letter sent via email. This first letter provided a claim chart, demonstrating that the Accused Instrumentalities infringe at least claim 1 of the '761 patent. Moreover, Lojer's January 20, 2026 letter stated that "the TRL Chiro Supreme 3.0 product is similar to Lojer's Manuthera 242 product

to such extent that it seems remarkable unless conscious copying has taken place." An automated email message from Defendant confirmed Defendant's receipt of this first letter, but Defendant did not provide any further response to Lojer. Accordingly, Lojer sent a reminder email on February 6, 2026, and also sent via DHL a follow-up paper copy of a second letter. This second letter again providing the claim chart, demonstrating that the Accused Instrumentalities infringe at least claim 1 of the '761 patent, and again noted the striking similarities between the TRL Chiro Supreme 3.0 product is similar to Lojer's Manuthera 242 product. Defendant received the paper copy of second letter on February 12, 2026. However, Defendant still has not responded to Lojer.

31. To date, Defendant has not responded to Lojer in any meaningful capacity. Defendant has had knowledge of the '761 Patent and its infringement since at least January 20, 2026, i.e., the receipt date of the first letter. Defendant has never responded to any letter, regardless of whether sent via email or DHL, has never identified any basis on which it contends the Accused Instrumentalities do not infringe the '761 Patent or on which it contends the '761 Patent is invalid, and has continued its infringing activities without interruption.

32. On information and belief, Defendant copied Lojer's patented Manuthera 242 Mobilisation Table in "designing" the Accused Instrumentalities. Lojer publicly launched the Manuthera 242 in 2015 and has marketed it since that time, including on Lojer's public website and via its distributors and/or resellers. The Manuthera 242 has been sold in the United States since at least 2017. Defendant first offered the Chiro Supreme 3.0 for sale years later, well after the Manuthera 242 became publicly available and after the '761 Patent issued. Indeed, Defendant was not even an incorporated entity until 2022, approximately seven years after the Manuthera 242 product launched and approximately 5 years after the issue date of the '761 patent. The Accused Instrumentalities duplicate and replicate the distinctive dual-actuator and intermediate-

frame geometry of the Manuthera 242, including the shapes and relative positions of the lower and intermediate frames, electronic actuators, support brackets, etc., to a degree that cannot be explained by independent design. Defendant has offered no explanation to the contrary despite Lojer's express charges of copying.

33. Defendant also actively, knowingly, and intentionally induces, and has induced, infringement of claims 1-8 of the '761 Patent under 35 U.S.C. § 271(b) at least by actively encouraging others (including its customers, distributors, resellers, and end users) to make, use, sell, offer to sell, and/or import into the United States the Accused Instrumentalities, with knowledge of the '761 Patent and with the specific intent that those acts infringe the '761 Patent, and/or with willful blindness to that infringement. Defendant has taken these actions intending to cause infringing acts by others. At least the videos identified above actively induce others to use the Accused Instrumentalities.

34. Defendant's acts of infringement have caused damage to Lojer. Lojer is entitled to recover from Defendant the damages sustained by Lojer as a result of Defendant's wrongful acts in an amount subject to proof at trial. For example and without limitation, Lojer's damages include, at a minimum, a reasonable royalty under 35 U.S.C. § 284, and Lojer further seeks its lost profits on sales it would have made but for Defendant's infringement.

35. Defendant's acts of infringement have been and continue to be willful, deliberate, and egregious. Defendant has known of the '761 Patent and of its infringement since at least January 2026. Since receiving Lojer's charted notice letters, Defendant has continued to make, use, sell, offer for sale, and import into the United States the Accused Instrumentalities without interruption, without responding to Lojer, and without identifying any non-infringement or invalidity position. On information and belief, Defendant copied Lojer's patented Manuthera 242

design in "developing" the Accused Instrumentalities. Lojer is entitled to enhanced damages of up to three times the damages found or assessed, pursuant to 35 U.S.C. § 284.

36. Defendant's infringement has caused and, unless enjoined, will continue to cause, Lojer irreparable harm for which there is no adequate remedy at law. Lojer and Defendant are direct competitors in the United States market for hi-lo treatment and mobilization tables, and Defendant's Accused Instrumentalities compete directly against Lojer's patented Manuthera 242 product. Defendant's continued sale of the Accused Instrumentalities causes Lojer to lose sales, market share, customer and distributor relationships, and goodwill; erodes prices in a market with a limited number of purchasers; and deprives Lojer of the exclusivity that is the essence of the patent right. These harms are difficult to quantify and are not fully compensable in money damages. There is a causal nexus between these harms and the infringing features of the Accused Instrumentalities, because the dual-actuator geometry claimed in the '761 Patent drives the range of motion, stability, and hi-lo functionality that customers purchase the Accused Instrumentalities to obtain. Lojer is entitled to preliminary and permanent injunctive relief under 35 U.S.C. § 283.

37. Lojer provides the foregoing explanation of infringement with regard to an exemplary claim compared to an exemplary product. Lojer reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified herein and for other claims and functionalities of the goods and services provided by and through Defendant.

## V. JURY DEMAND

38. Plaintiff requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that claim 1 and all other asserted claims of United States Patent No. 9,642,761 was/were and is/are infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment and order finding that Defendant's infringement has been willful;

c. A permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendant and its officers, directors, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with any of them, from further acts of infringement of the '761 Patent, including making, using, selling, or offering to sell within the United States, or importing into the United States, the Accused Instrumentalities and any colorable variation thereof;

d. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages;

e. Judgment that Defendant's infringement was willful and an award of enhanced damages of up to three times the damages found or assessed, pursuant to 35 U.S.C. § 284;

f. A determination that this is an exceptional case and an award to Plaintiff of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

g. An award of supplemental damages for any infringement occurring after the period reflected in the evidence at trial and, in the event a permanent injunction is not granted, an ongoing royalty for Defendant's continued infringement;

h. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

i. That Plaintiff be awarded its costs of suit pursuant to 35 U.S.C. § 284 and 28 U.S.C. § 1920;

j. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

October 19, 2026

*/s/ Trey Yarbrough*
Trey Yarbrough
Bar No. 22133500
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
(903) 595-3111 phone
(903) 595-0191 fax
trey@yw-lawfirm.com

Jonathan A. Roberts (*pro hac vice* forthcoming)
Joseph A. Rhoa (*pro hac vice* forthcoming)
NIXON & VANDERHYE, PC
901 N. Glebe Road, Suite 1100
Arlington, Virginia 22203
(703) 816-4000 phone
(703) 816-4100 fax
jr@nixonvan.com
jar@nixonvan.com

*Attorneys for Plaintiff*
*Lojer Oy*